UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

TINIQUA GAY and FELICIA GAY,  )
                                 )
    Plaintiffs,          )         Civil Case No.
                                 )        5:17-cv-258-JMH
v.                       )
                                 )     **MEMORANDUM OPINION**
                                 )        **& ORDER**
CABINET FOR HEALTH AND FAMILY  )
SERVICES, et al.,         )
                                 )
    Defendants         )
                                 )

\*\*\*

A dispute between foster and birth parents over a piece of pizza has led to this civil rights lawsuit involving alleged unconstitutional racial and sexual-orientation discrimination. Plaintiffs, a married lesbian African-American couple, contend the Kentucky Cabinet for Health and Family Services (the "Cabinet") closed their foster home in violation of the Fourteenth Amendment's Equal Protection Clause. Defendants deny the allegation, claim they are immune from suit, argue that Plaintiffs do not have standing to pursue their claims, and now ask this Court to dismiss the case.

Defendants have filed a Joint Motion to Dismiss [DE 9]. Plaintiffs Tiniqua and Felicia Gay ("the Gays") have filed a Response in Opposition [DE 10], as well as their own Motion to Amend the Complaint [DE 13]. Defendants have also filed a Motion

1

to Stay Discovery [DE 12].  All Motions are fully briefed [DE 11, 17, 18, 19] and ripe for the Court's review.  For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED**. Plaintiffs' Motion to Amend the Complaint is **DENIED**, and Defendants' Motion to Stay Discovery is **DENIED AS MOOT**.

I.

The United States Constitution forbids discrimination based on race and sexual orientation.  The Gays claim the state of Kentucky and several of its employees violated this precept and failed to provide Equal Protection under the law when the state closed their foster home.  Plaintiffs now look to vindicate their rights through 42 U.S.C. § 1983 and supplemental state law claims.

The state certified Tiniqua Gay as a foster parent in May 2013, and she received her first child placement in June 2013.  [DE 1, p. 5].  Tiniqua's first foster child was "her teenage African American brother." [*Id.* at pp. 5-6].  Felicia Gay became certified as a foster parent in December 2013, and the couple secured a second placement in February 2014—a 16-year-old Caucasian female. [*Id.* at p. 6].

Tiniqua Gay entered into a foster parent contract with the state on July 1, 2014, and Plaintiffs received their third placement—a two-year-old Caucasian female—in December 2014.  [*Id.*].  Tiniqua Gay's fourth and fifth placements occurred in May 2015 and June

2016. These placements are the subject of this lawsuit. The 2015 placement was a one-week-old Caucasian female referred to as "Baby M." [*Id.*]. A year later, "Baby B"—also a one-week-old Caucasian female and Baby M's biological sister—came to live with Tiniqua Gay directly from the University of Kentucky NICU. [*Id.*].

Several months later, Tiniqua and Felicia married. [*Id.*]. They allege that the Cabinet "never acknowledged or recognized" the marriage and "did not update their records to reflect that the Plaintiffs were married." [*Id.*]. Only two months after marriage, the Gays informed the Cabinet that they wished to adopt Baby M and Baby B. [*Id.*]. The Gays intended to do so after the biological mother of the two girls had her parental rights terminated, which was scheduled for May 15, 2017. [*Id.* at pp. 6-7].

But before official adoption could commence, an altercation between the Gays and the biological mother kicked over the first domino in what eventually became the present lawsuit. The kerfuffle between Felicia Gay and the birth mother occurred a month before the biological parents' rights were set to terminate. [*Id.* at p. 7]. At the Clark County Department for Community Based Services office in Winchester, Kentucky, the birth parents visited with Baby B and Baby M under the supervision of social worker and Defendant Emily Sergent. [*Id.*]. Felicia Gay was also present and became concerned when she witnessed the birth mother feed Baby M

pizza with tomato sauce on it. [*Id.*]. According to Plaintiffs, Baby M has a food allergy to tomatoes—a fact that Plaintiffs claim both Sergent and the biological mother knew. [*Id.*]. Gay approached the birth parents and asked about the ingredients Baby M consumed, and the birth mother reacted angrily. [*Id.*]. Plaintiffs allege that the birth mother "began yelling" at Gay:

> The biological mother proceeded to call Plaintiff Gay 'a fuc*ing n*gger' and asked Defendant Sergent 'why is the Cabinet letting her kids be raised by two (2) n*gger lesbian bitc*es?'
>
> [*Id.*].

Plaintiffs allege that Gay kept quiet at that point because she did not want to escalate the situation. [*Id.*]. Later, however, Gay confronted Sergent and asked why she did not step in to diffuse the situation. [*Id.*].

Defendants have a different version of events, claiming Gay "verbally confronted" the birth mother. [DE 9, p. 3]. Defendants describe a "heated" argument and an "ugly verbal confrontation between the two women" that "escalated in front of the children." [*Id.*]. No one claims that any Cabinet employee or state official used racially charged language or made any comments about the Gays' sexual orientation. The only person accused of making derogatory slurs is the birth mother who is not part of this lawsuit. Although the parties have different accounts, the Court accepts as true all

factual allegations made by Plaintiffs because this case sits at the motion to dismiss stage.

No one claims that any Cabinet employee or state official used racially charged language or made any comments about the Gays' sexual orientation. The only person accused of making derogatory slurs is the birth mother who is not part of this lawsuit.

A week after the altercation, Plaintiffs contacted a Cabinet employee and inquired when they could begin the formal adoption process with Baby M and Baby B. [DE 1, p. 7]. The employee, identified only as "Ms. Abshire," told Plaintiffs that the process would begin as soon as the biological mother's rights were terminated. [*Id.*]. Only five days later, Plaintiffs filed a formal complaint against Sergent claiming they were treated differently because of their race and sexual orientation. [DE 1, p. 8]. And only two days after filing the formal complaint, Plaintiffs received a phone call from Defendant Kidd who informed Plaintiffs that the Cabinet was removing Baby M and Baby B due to the verbal confrontation. [*Id.*]. Plaintiffs allege Kidd said the Cabinet could not "allow a situation to exist that is not in the best interest of the children." [*Id.*].

Within a week of hearing from Kidd, Plaintiffs learned that the Cabinet was closing their foster home. [*Id.*]. At that time, the official reason was "because the foster parents (Plaintiffs)

requested that it be closed." [*Id.*].  But Plaintiffs did not make that request, and they informed the Cabinet only a few days after receiving notification of the closure that they wished to keep their home open.  [*Id.*].  Still, the Cabinet closed the home on May 11, 2017—three days after Plaintiffs sent a certified letter to the Cabinet that they were not closing their home.  [*Id.*]. Again, Cabinet officials told Plaintiffs they could not "allow a situation to exist that is not in the best interest of the children."  [*Id.*].  And the Cabinet decided that "Felicia and Tiniqua Gay will not receive any future placement into their home." [*Id.*].

Plaintiffs then filed this lawsuit under 42 U.S.C. § 1983 claiming a range of constitutional as well as state law violations. Plaintiffs claim the Cabinet and its employees closed the foster home because of their race and sexual orientation.  They further claim the Cabinet removed the children to place them with a Caucasian family.  The Gays filed suit on June 13, 2017, and the present motions followed.

## II.

Defendants have moved for dismissal under Rules 12(b)(1) and 12(c).  Plaintiffs have asked the Court for leave to amend under Rule 15.  The numerous motions filed by the parties implicate

several different standards of review. The Court discusses each in turn.

A.

First, Defendants move to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute." *Id.* These are limited to actual cases or controversies. U.S. Const. art. III, § 2. There is a presumption against subject matter jurisdiction, and the "burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

"Subject matter jurisdiction is always a threshold determination." *Am. Telecom. Co., LLC v. Rep. of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). But a party may object to subject matter jurisdiction at any stage in the litigation. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Parties challenge subject matter jurisdiction in two ways: (1) through the sufficiency of the pleadings (a "facial attack"), or (2) despite the sufficiency of the pleadings, by disputing the factual content within the pleadings (a "factual attack"). *See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320,

330 (6th Cir. 2007). Here, Defendants argue the pleadings fail to establish subject matter jurisdiction, which implicates a facial attack.

"When reviewing a facial attack, a district court takes the allegations in the complaint as true." *Id.* If the allegations within the complaint "establish federal claims," then subject matter jurisdiction is appropriate. *Id.* "This approach is identical to the approach used by the district court when reviewing a motion invoking Federal Rule of Civil Procedure 12(b)(6)." *Global Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015).

## B.

Second, Defendants move under rule 12(c). [DE 9]. "After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Under such a motion "all well-pleaded material allegations of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). A motion for judgment on the pleadings requires the same "standard of review employed for a motion to dismiss under Rule 12(b)(6)."

*Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 999 (6th Cir. 2015) (quoting *Tucker*, 539 F.3d at 549).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court views the Complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). A "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## C.

Finally, Plaintiffs have filed a Motion to Amend the Complaint. [DE 13]. When a party seeks to amend "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Rule establishes a "liberal policy of permitting amendments." *Inge v. Rock Fin. Corp.* 388 F.3d 930, 937 (6th Cir. 2004). "Denying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

"A district court may deny a plaintiff leave to amend his or her complaint . . . when the proposed amendment would be futile." *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005). This applies when a plaintiff cannot overcome a qualified immunity defense. *Havertsick Enters. Inc. v. Fin. Fed. Credit Inc.*, 32 F.3d 989, 995-96 (6th Cir. 1994).

## III.

Defendants argue that sovereign immunity and standing present threshold limitations on Plaintiffs' claims. Although "circuits are split on whether the Eleventh Amendment is a jurisdictional bar" or an affirmative defense, the Sixth Circuit has held that "the Eleventh Amendment is a true jurisdictional bar that courts can—but are not required to—raise *sua sponte* at any stage in the litigation." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). The Circuit has also held that "once raised as

a jurisdictional defect, [the Eleventh Amendment], must be decided before the merits." *Id.* Here, Defendants raise Eleventh Amendment immunity as a threshold defense, and the Court will address it before turning to the merits. The Court will then address Defendants' standing argument.

## A.

It is well-settled that the Eleventh Amendment and sovereign immunity prevent a state and its agencies from being sued in federal court absent consent to suit, abrogation by Congress, or waiver of immunity. *Idaho v. Coeur d'Alene Tribe*, 521 US. 261, 267 (1997); *Alabama v. Pugh*, 438 U.S. 781 (1978); *Butcher v. Wells,* No. 10-CV-102-WOB, 2011 WL 1769443, at *2 (E.D. Ky. May 9, 2011). "From birth, the States and the Federal Government have possessed certain immunities from suit in state and federal courts" *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc). "[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution and which they retain today (either literally or by virtue of their admission into the Union and upon an equal footing with other States) except as altered by the plan of the Convention or certain constitutional Amendments." *Alden v. Maine*, 527 U.S. 706, 713 (1999). "This immunity not only protects state treasuries but also 'accord[s] States the dignity that is consistent with their statutes as sovereign entities.'"

*Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015) (quoting *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002)).

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Such lawsuits are "no different from a suit against the State itself." *Id.; see also Jones v. Hamilton Cty. Sheriff*, 838 F.3d 782, 784 (6th Cir. 2016) ("actions against state officers in their official capacities count as lawsuits against the State.") (quoting *Crabbs*, 786 F.3d at 428-29). Because state officials acting in their official capacities are not "persons," they are not subject to § 1983 liability. *Will*, 491 U.S. at 71; *see also Ernst*, 427 F.3d at 358 (immunity "applies to actions against state officials sued in the official capacity for money damages").

A plaintiff may, however, sue state officials for equitable relief pursuant to the doctrine first announced in *Ex parte Young*, 209 U.S. 123 (1908). "Official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985). "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983." *Will*, 491 U.S. at 71, n.10. Thus, sovereign immunity "does not apply if the lawsuit is filed

against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst*, 427 F.3d at 358. The *Ex Parte Young* does not apply to a retroactive award "which requires the payment of funds form the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). In short, *Ex Parte Young* allows a plaintiff to bypass sovereign immunity when the lawsuit is filed against a state official and the claim "seek[s] prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 965 (6th Cir. 2013).

*Ex Parte Young* does not allow injunctive relief on the basis of state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Id.* at 121. This applies "to state-law claims brought into federal court under pendent jurisdiction." *Id.*; *Williams v. Kentucky*, 24 F.3d 1526, 1543 (6th Cir. 1994); *see also Freeman v. Mich. Dep't*

*of State*, 808 F.2d 1174, 1179 (6th Cir. 1987) ("the Eleventh Amendment forbids federal courts from enjoining state institutions and state officials for violation of state law").

States may also waive sovereign immunity. *Ernst*, 427 F.3d at 358; *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011) ("A State . . . may choose to waive its immunity in federal court at is pleasure."). Waiver of sovereign immunity exists "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Atascadero State Hosp. v. Scanion*, 473 U.S. 234, 239-40 (1985) (quoting *Edelman*, 415 U.S. at 673). But the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Id.* at 241. Waiver is "strictly construed . . . in favor of the sovereign," and a state must make a "clear declaration" that it consents to suit. *Sossamon*, 563 U.S. at 284-85.

"A state's consent to suit in its own courts is not a waiver of its immunity form suit in federal court." *Id.* at 285; *see also Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990) ("A state does not waive its Eleventh immunity by consenting to suit only in its own courts."). "[I]n order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to

subject itself to suit in *federal court*." *Atascadero State Hosp.*, 473 U.S. at 241 (emphasis in original). "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued but *where* it may be sued." *Pennhurst*, 465 U.S. at 99 (emphasis in original); *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999) ("a State may retain Eleventh Amendment immunity from suit in federal court even if it has waived its immunity and consented to be sued in its state courts."); *Mosier v. Kentucky*, 640 F. Supp. 2d 875, 879 (E.D. Ky. 2009).

Because courts "consider Eleventh Amendment Immunity, as well as any exceptions to it, on a claim-by-claim basis," the Court will break out each of Plaintiffs' claims. *Ernst*, 427 F.3d at 368. Here sovereign immunity shields (1) all claims against the Cabinet, (2) the official-capacity money damages claims against Kidd, Spencer, and Sergent, and (3) all claims for injunctive relief against all defendants pursuant to alleged violations of state law.

First, the Cabinet. These claims fail because the Cabinet is an arm of the commonwealth of Kentucky. *See, e.g.*, *Sefa v. Cabinet for Health & Family Servs.*, 510 F. App'x 435 (6th Cir. 2013); *Fleet v. Ky. Cabinet for Health & Family Servs.*, NO 3:15-CV-00476-JHM, 2016 WL 1241540, at *3 (W.D. Ky. Mar. 28, 2016); *Hatfield v. Cabinet for Health & Family Servs.*, No. CIV. 5:13-222-KKC, 2014 WL

1246354, at *2 (E.D. Ky. Mar. 24, 2014). Plaintiffs make no attempt to refute this fact. And although Kentucky has waived sovereign immunity under the Kentucky Civil Rights Act in state court, *Dep't of Corrections v. Furr*, 23 S.W.3d 615 (Ky. 2000), Kentucky has not waived immunity in federal court. *See McCollum v. Owensboro Comm. & Tech. College,* No. 4:09CV-00121-M, 2010 WL 1742379, at *4 (W.D. Ky. Apr. 29, 2010); *Mosier v. Kentucky*, 640 F. Supp. 2d 875, 879 (E.D. Ky. 2009); *Wilson v. Kentucky*, No. 5:08-238, 2008 WL 4951774, at *1 (E.D. Ky. Nov. 14, 2008). Because consent in state court does not amount to consent in federal court, Kentucky's state waiver has no effect on this lawsuit. *Sossamon*, 563 U.S. at 284-85. And a state must "by the most express language" consent in federal court—something Kentucky has not done. *Edelman*, 415, U.S. at 673. As such, sovereign immunity bars suit against the Cabinet in federal court.

Second, the official-capacity claims against Kidd, Spencer, and Sergent for money damages. These fail because suing officials in their official capacity for monetary relief is tantamount to suing the state. *Will*, 491 at 58. "[L]awsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent,' and they may . . . be barred by sovereign immunity." *Lewis v. Clarke*, 137 S. Ct. 1285, 1290-91 (2017) (quoting *Graham*, 473 U.S. at 165-66). Here, "since CHFS is immune from suit, any official-capacity

claims against any of its employees . . . are precluded as well."
*Evans v. Downy*, NO. 1:15-CV-00117-GNS, 2016 WL 3562102, at *3 (W.D.
Ky. June 24, 2016). Thus, official capacity claims for money
damages will be dismissed.

Third, the supplemental state law claims for equitable relief.
It is black-letter law that sovereign immunity bars these claims.
*Pennhurst*, 465 U.S. at 106. Because "[i]t is . . . well-
established that a federal court cannot entertain a lawsuit against
state officials for violations of state law" these claims against
Kidd, Spencer, and Sergent are dismissed to the extent Plaintiffs
seek equitable relief. *Turker v. Ohio Dep't of Rehab. & Corr.*,
157 F.3d 453, 456-57 (6th Cir. 1998).

Sovereign immunity does not bar claims for damages against Kidd,
Sergent, and Spencer in their individual capacities based on
alleged violations of federal law. *See Hafer v. Melo*, 502 U.S.
21, 23 (1991). Sovereign immunity "does not erect a barrier
against suits to impose individual and personal liability." *Id.*
at 30-31. In addition, Plaintiffs may seek prospective injunctive
relief based on violations of federal law as those claims fall
within the *Ex Parte Young* exception. *Edelman*, 415 U.S. at 677.

Because the Court dismisses claims pursuant to the Eleventh
Amendment, the claims are dismissed without prejudice. *Carmichael
v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014)

("Dismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice.").

B.

Defendants also seek dismissal of claims for prospective injunctive relief against Kidd, Spencer, and Sergent in their official capacities. [DE 9, p. 13]. As described above, the Eleventh Amendment does not bar these claims, but Defendants argue dismissal is proper under 12(b)(1) because Plaintiffs have failed to demonstrate Article III standing.

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013). A plaintiff "generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interest of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). "[A] plaintiff invoking jurisdiction must 'show[] that he has standing for each type of relief sought.'" *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). This includes injunctive relief, even if the party can establish standing for money damages. *Cohn v. Brown*, 161 F. App'x 450, 454-56 (6th Cir. 2005); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983).

18

"Past exposure to illegal conduct, by itself, is insufficient" to establish standing for injunctive relief. *Fleet v. Ky. Cabinet for Health & Family Servs.*, 2016 WL 1241540, at *4 (W.D. Ky. Mar. 28, 2016) (quoting *Campbell v. Univ. of Louisville*, 862 F. Supp. 2d 578, 584 (W.D. Ky. 2012)). Plaintiffs can establish standing for injunctive relief only where there is an ongoing violation of law or a real threat of future injury. *Id.* "Unless a past injury is accompanied by continuing, present adverse effects, it does not in itself show a present case or controversy regarding injunctive relief." *Id.*, at *5. "[W]here the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001); *Baxter v. Daughtery*, No. 5:08-485-JMH, 2010 WL 3620247, at *5 (E.D. Ky. Sept. 10, 2010). When a plaintiff seeks injunctive relief that is "the rough equivalent of asking this Court to tell Defendant[s] . . . to 'be good'" the Court will "decline the invitation." *Baxter*, 2010 WL 3620247, at *5.

Here Plaintiffs ask this Court to permanently enjoin Kidd, Spencer, and Sergent from discriminating based on race, sexual orientation and family status. [DE 1, pp. 15-16]. Plaintiffs also request the Court order Defendants to "take sensitivity classes for proper and appropriate treatment of clients based upon race, sexual orientation and family status." [*Id.*]. Plaintiffs finally ask that this Court order the State to review "all

Complaints in the last five (5) years wherein it has been alleged by a foster parent that a child had been removed from the foster home because of race, sexual orientation or family status." [*Id.*].
As already discussed, however, all claims against the state are dismissed under sovereign immunity.

Plaintiffs' claims fail for a variety of reasons. First, although Plaintiffs' must establish Article III standing, they *do not even mention* standing in their response to Defendants' Motion to Dismiss. Plaintiffs do not address the pages of briefing that Defendants spent on the standing issue. When a party fails to respond to an argument in a motion, the Court may assume opposition to the motion is waived and grant relief to the opposing party on that issue. *Humprey v. U.S. Att'y Gens. Office*, 279 F. App'x 328, 332 (6th Cir. 2008); *Resnick v. Patton*, 258 F. App'x 789, 790-91 n.1 (6th Cir. 1989). This point is amplified here where Plaintiffs "bears[] the burden of establishing standing." *Clapper*, 568 U.S. at 412.

Not only do Plaintiffs fail to respond to the standing argument, they implicitly concede they cannot pursue the injunctive relief in their Motion to Amend. There, Plaintiffs admit they "cannot go forward against the named individual social workers in their official capacity" and "[t]he Amended Complaint . . . merely pleads the social workers in their individual capacity as opposed to

official capacity." [DE 13, p. 2]. As the Supreme Court recently explained, individual capacity suits, "seek to impose individual liability upon a government officer for actions taken under color of state law." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Official capacity lawsuits are used where "the relief sought is only nominally against the official and in fact is against the official's office and thus against the sovereign itself." *Id.* Here, the equitable relief sought is undoubtedly "only nominally against the official" and is in fact against the Cabinet and its employees. *Id.* Thus, by admitting they cannot move forward on official capacity claims, Plaintiffs suggest they wish to only pursue personal capacity claims that impose "*individual liability* upon a government officer." *Id.*

Finally, the Court finds Defendants standing argument persuasive. Plaintiffs face no imminent threat of future injury. There is no "continuing violation of federal law" that must be enjoined. *Diaz*, 703 F.3d at 965. Instead, Plaintiffs want Defendants to review complaints not involved in this case and take sensitivity classes. This is not the same as issuing an injunction to stop an ongoing violation of federal law. "Plaintiffs have not sufficiently pleaded any continuing, present adverse effects that would show a present case or controversy for injunctive relief.

*See Handley v. Coursey*, No. 1:15-CV-00056-GNS-HBB, 2015 WL 3581002, at *3 (W.D. Ky. June 5, 2015).

Because Plaintiffs have not established Article III standing to pursue their federal claims for injunctive relief against Kidd, Sergent, and Spencer, those claims are dismissed without prejudice. *See Allstate Ins. Co. v. Global Med Billing, Inc.*, 520 F. App'x 409, 410-11 (6th Cir. 2013) (ruling a dismissal for lack of standing should be dismissed without prejudice).

## IV.

We now turn to the claims for damages against Kidd, Spencer, and Sergent for alleged violations of federal law under § 1983. Defendants argue these claims fail on several grounds: absolute immunity, the domestic relations doctrine, and on the merits. Because the Court will dismiss these claims on qualified immunity, the Court need not reach Defendants' alternative arguments.

State officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, ___ S. Ct. ___, 2018 WL 491521, at *10 (Jan. 22, 2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Qualified immunity is "an *immunity from suit* rather than a mere defense to liability . . . and . . . it is effectively lost if a case is erroneously permitted

to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Thus, Courts must "resolv[e] immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Rondigo LLC v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

In evaluating qualified immunity, courts "conduct a two-step inquiry: first, viewing the facts in the light most favorable to the plaintiff, 'do the facts alleged show that the officer's conduct violated a constitutional right?'" *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). "Second, was 'the right clearly established' at the time of the violation." *Peatross*, 818 F.3d at 240. Courts may address either prong of the analysis first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). While courts have discretion to determine the merits of the constitutional claim, the Supreme Court has emphasized that "lower courts 'should think hard, and then think hard again,' before addressing both qualified immunity and the merits of an underlying constitutional claim." *Wesby*, 2018 WL 491521, at *10 n.7 (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011)). After thinking hard twice, this Court finds it appropriate to consider first whether the law was clearly established.

A federal right is clearly established when it is "sufficiently clear' that every 'reasonable official would understand what he is doing is unlawful.'" *Wesby*, 2018 WL 491521, at *10 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The "'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Binay v. Bettendorf*, 601 F.3d 640, 646-47 (6th Cir. 2010) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). The right must be "settled law . . . which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Wesby*, 2018 WL 491521, at *11 (internal quotations and citations omitted). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). "[R]easonableness of official action . . . must be 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Ziglar*, 137 S. Ct. at 1866 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

Not only must the law must be clearly established, but it must "prohibit the officer's conduct in the *particular circumstances before him*." *Wesby*, 2018 WL 491521, at *11 (emphasis added). The rule "must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he

24

confronted.'" *Id*. (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  This "protects officials accused of violating 'extremely abstract rights.'" *Ziglar*, 137 S. Ct. at 1866.  The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742.  "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 2018 WL 491521, at *11 (quoting *Anderson*, 483 U.S. at 641).

Once the defense of qualified immunity is raised, "the burden is *on the plaintiff* to prove that the official is not entitled to immunity." *Binay*, 601 F.3d at 647 (emphasis added); *see also Esssex v. Cty. Of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013).  At the motion to dismiss stage, "the test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Shively v. Green Local Sch. Dist. Bd. Of Educ.,* 579 F. App'x 348, 353 (6th Cir. 2014). Vicarious liability does not apply to § 1983 claims, and a plaintiff "must plead that each government-official defendant,

through the official's *own individual actions* has violated the Constitution." *Id.* at 352 (emphasis added).

Qualified immunity applies to Cabinet social workers. *See Humphrey v. Sapp*, No. 3:09CV-305-H, 2013 WL 588219, at *1 (W.D. Ky. Feb. 13, 2013); *see also Kovacic v. Cuyahoga Cty. Dep't of Children and Family Servs.*, 724 F.3d 687, 695 (6th Cir. 2013); *Achtterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir. 1989). Thus, here, Plaintiffs' federal damages claims are barred unless they have pleaded sufficient factual allegations that, taken as true, establish that Defendants violated clearly established federal rights.

Plaintiffs have failed to so plead. In the first place, Plaintiffs fail to allege specific actions by the individual officers that violated any federal rights. *See Shively*, 579 F. App'x at 352. Instead, Plaintiffs generally allege that Cabinet officials violated the Fourteenth Amendment. Plaintiffs name Kidd, Spencer, and Sergent, but never identify any specific action that these particular Defendants took that violated clearly established federal rights. Plaintiffs argue that there "is no question that in the case at bar the Plaintiffs have stated that the Defendants have violated the Equal Protection Clause of the Fourteenth Amendment which require that each state provide equal protection to all persons within its jurisdiction." [DE 10, p.

7]. This truism presents the high level of generality insufficient to overcome qualified immunity. Just as the general proposition "that an unreasonable search or seizure violates the Fourth Amendment is of little help in deciding whether the volatile nature of a particular conduct is clearly established," so too is the general proposition that racial or sexual-orientation discrimination violates the Equal Protection Clause unhelpful in determining whether the nature of the social workers' *particular conduct* violates clearly established law. *See al-Kidd*, 131 S. Ct. at 2084.

The Gays do not describe (1) what specific clearly established law the defendants violated or (2) what specific actions each individual officer too to violate the alleged clearly established law. Plaintiffs cannot circumvent qualified immunity by stating that racial and sexual-orientation discrimination is generally unlawful and Defendants violated that principle. *See al-Kidd*, 131 S. Ct. at 2084. The clearly established law must apply in the "specific context" the official faced. *Mullenix*, 136 S. Ct. at 308. The "volatile nature of . . . *particular conduct*" must violate that clearly established law. *al-Kidd*, 131 S. Ct. at 2084. Plaintiffs have failed on both fronts. And because the *plaintiff has the burden* of overcoming a qualified immunity defense, this Court must rule in Defendants' favor. *Binay*, 601 F.3d at 647.

Further, Plaintiffs misunderstand the mechanics of qualified immunity. In their response to Defendants' motion, Plaintiffs argue that a legal principle is clearly established based on rulings from "the Kentucky Supreme Court or Kentucky Statute which is sufficiently clear to put the official on notice that their conduct is unlawful." [DE 10, p. 8]. Plaintiffs continue: "In the case at hand, Kentucky Discrimination Statute makes it clear that you cannot discriminate against a person because of that person's race, sexual orientation or family status." [*Id.*]. The Gays argue that Kentucky *state law* provides the "clearly established" principle that Defendants violated. This, they argue, overcomes qualified immunity. But that is not the law. Qualified immunity provides a defense to federal law claims, and thus the Gays' must point to clearly established *federal* law that Defendants violated through specific conduct in the particular circumstance. As already discussed, the Gays failed to do so. An alleged violation of state law does not overcome a qualified immunity defense on federal claims. Thus, qualified immunity bars the federal law claims for money damages against Kidd, Spencer, and Sergent, and these claims are dismissed.

V.

The Gays' remaining claims seek damages against Kidd, Sergent, and Spencer for alleged violations of state law, including the KCRA and intentional infliction of emotional distress. [DE 1].

28

While Defendants ask the Court to rule on the merits of these claims, the Court finds it appropriate to dismiss the claims without prejudice pursuant to 28 U.S.C. § 1367.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This statute allows courts to exercise supplemental jurisdiction over claims "not otherwise within their adjudicatory authority" when the claims form part of the same case or controversy as the claims creating federal jurisdiction. *Artis v. District of Columbia*, _____ S. Ct. _____, 2018 WL 491524, at *3 (Jan. 22, 2018).

The basis for federal jurisdiction in this case was 42 U.S.C. § 1983. As already discussed, however, those federal claims will be dismissed, leaving only the state-law claims against the individual defendants. Because the parties are not diverse and there is no federal question involved, the remaining claims have no independent basis for federal jurisdiction.

"When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims." *Artis*, 2018

WL 491524, at *3.  In deciding whether to retain jurisdiction, the
Court considers the interests of judicial economy balanced against
the avoidance of needlessly deciding state-law claims.  *Harper v.
AutoAlliance Int'l Inc.*, 392 F.3d 195, 211-12 (6th Cir. 2004).
Here, factors support dismissing the state law claims.  This case
has gone through no discovery.  A trial date is not set.  And the
remaining state-law claims implicate a range of highly important
state interests.  Disputes regarding placement of children in
foster homes involves decisions largely left to the states.  *E.g.,
Johnson v. Collins*, No. 15-31-ART, 2015 WL 4546794 (E.D. Ky. 2015)
("Federal courts are not the appropriate forum to deal with cases
involving child custody.").  This Court need not wade into the
water of the state's ability to oversee its foster placement
system.

  Thus, the Court will not exercise jurisdiction over the
remaining state law claims and they will be dismissed without
prejudice.

                                VI.

  Finally, the Court denies Plaintiffs' Motion to Amend as futile.
Plaintiffs' amendment would "not change the facts of the action
but merely plead[] the social workers in their individual capacity
as opposed to official capacity."  [DE 13].

But it does not whether Plaintiffs name Defendants in their official or individual capacities. In either event, the result is the same because "immunity turns on functional reality, not labels, and thus does not turn on whether the plaintiffs label their claim as official-capacity or individual-capacity suit." *In re Ohio Execution Protocol Litig.*, Nos. 17-3800/3834, 2017 WL 3912735, at *3 (6th Cir. Sept. 7, 2017). Here it is the *relief sought*, not how the defendants are named, that matters. A court does not "simply rely on the characterization of the parties in the complaint." *Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017). Instead, the Court "must determine in the first instance whether the remedy sought is truly against the sovereign." *Id*.

Because the same analysis would apply whether Plaintiffs name Defendants in their official or individual capacities, the amendment "would not permit the complaint to survive a motion to dismiss." *Miller*, 408 F.3d at 817. As such, the Motion to Amend is denied.

## VII.

For the reasons stated herein, **IT IS ORDERED** as follows:

(1)    Defendants Motion to Dismiss [DE 9] is **GRANTED;**

(2)    All claims against the Cabinet for Health and Family Services are **DISMISSED WITHOUT PREJUDICE**;

(3)     Count I and Count II for equitable relief against

        Defendants Kidd, Spencer, and Sergent are **DISMISSED WITHOUT**

        **PREJUDICE;**

(4)     Count I and Count II for money damages against

        Defendants Kidd, Spencer, and Sergent are **DISMISSED WITH**

        **PREJUDICE;**

(5)     Counts III, IV, V, VI, and VII against Defendants

        Kidd, Spencer, and Sergent are **DISMISSED WITHOUT PREJUDICE;**

(6)     Plaintiffs' Motion to Amend [DE 13, 16] is **DENIED;**

(7)     Defendants' Motion to Stay Discovery [DE 12] is **DENIED**

        **AS MOOT**;

(8)     That the clerk **STRIKE THIS MATTER FROM THE ACTIVE**

        **DOCKET.**

This the 16th day of February, 2018.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge